IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CORNELIA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 117-106 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner for Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Cornelia Jones appeals the decision of the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**.

I.     **BACKGROUND**

Plaintiff applied for DIB and SSI on June 26, 2012, alleging a disability onset date of January 1, 2011. Tr. ("R."), pp. 243-52. Plaintiff was twenty-eight years old on her alleged disability onset date and was thirty-two years old at the time the Administrative Law Judge ("ALJ") issued the decision under consideration. R. 84, 243. Plaintiff initially applied for benefits based on allegations of the following conditions: depression, anxiety, loss of sight in left eye, "learning," schizophrenia, and "both eyes." R. 288. Plaintiff completed eighth grade, and

prior to her alleged disability, Plaintiff had accrued a relevant work history as a lumber department cashier, cashier, and babysitter.  R. 99, 279, 298-302.

The Social Security Administration denied Plaintiff's applications initially, R. 136-53, and on reconsideration, R. 156-87.  Plaintiff requested a hearing before an ALJ, R. 206-07, and the ALJ held a hearing on June 30, 2016.  R. 92-135.  At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Alissa Smith, a Vocational Expert.  Id.  On July 25, 2016, the ALJ issued an unfavorable decision.  R. 68-84.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments:  obesity, diabetes mellitus type II, astigmatism, myopia, amblyopia, anxiety disorder, and affective disorders noted as bipolar, schizoaffective and adjustment disorders.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) [1] except she is

---

[1]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary

unable to climb ladders, ropes or scaffolds; would need to avoid concentrated exposures to hazards, things such as unprotected heights, working around dangerous moving machinery; would need to work in an environment not requiring driving as part of work; limited to doing only simple, routine tasks, involving only simple work place judgements with only occasional interaction with the general public.

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform including housekeeper and routing clerk (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from January 11, 2011, through July 25, 2016 (the date of the ALJ's decision) (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 73-83.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.

Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly: (1) determine Plaintiff's RFC; and (2) evaluate Plaintiff's subjective complaints. See doc. nos. 10 ("Pl.'s Br."), 12 ("Pl.'s Reply"). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 11 ("Comm'r's Br.").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439

---

work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

(11th Cir. 1997).   When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.   Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).   Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.   Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).   Substantial evidence is "more than a scintilla, but less than a preponderance:   '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"   Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).   If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.   Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).   Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.   McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.   Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard).   If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal

4

standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679
F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

Plaintiff argues the Commissioner's decision is not supported by substantial evidence
because the ALJ failed to properly determine Plaintiff's RFC by erroneously evaluating:  (1) the
limitations recommended by consulting psychologists Drs. John C. Whitley, III, and M. Kevin
Turner; (2) Plaintiff's mental limitations; and (3) Plaintiff's morbid obesity.  Pl.'s Br., pp. 6-16.
Plaintiff also argues the ALJ failed to properly evaluate Plaintiff's subjective complaints by
erroneously:  (1) applying a subjective standard for disability; (2) assessing Plaintiff's treatment
record; (3) assessing Plaintiff's compliance with her treatment regiment; (4) assessing Plaintiff's
work history; (5) evaluating Plaintiff's vision impairments; (6) evaluating Plaintiff's daily
activities; (7) discounting lay evidence; and (8) evaluating Plaintiff's morbid obesity.  Id. at 16-
25.   As explained below, the ALJ properly determined Plaintiff's RFC and evaluated her
subjective complaints.  Therefore, none of Plaintiff's arguments form a valid basis for reversal or
remand.

### A.   At Step Four, the ALJ Properly Determined Plaintiff's RFC

#### 1.   Legal Framework

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to
return to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  RFC is defined in the regulations
"as that which an individual is still able to do despite the limitations caused by his or her
impairments."  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted).
Courts have described RFC as "a medical assessment of what the claimant can do in a work
setting despite any mental, physical or environmental limitations caused by the claimant's

impairments and related symptoms." <u>Watkins v. Comm'r of Soc. Sec.</u>, 457 F. App'x 868, 870

n.5 (11th Cir. 2012).

Limitations are divided into three categories:  (1) exertional limitations that impact the

ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying,

pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job

demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers

and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3)

a combination of exertional and non-exertional limitations.  <u>Baker v. Comm'r of Soc. Sec.</u>, 384

F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)).  When determining

whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant

medical and other evidence." <u>Phillips</u>, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies

jobs as sedentary, light, medium, heavy, and very heavy.  20 C.F.R § 404.1567.  Here, the ALJ

determined Plaintiff has the ability to perform light work with additional restrictions.  "Light

work" is defined as work that involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of
> objects weighing up to 10 pounds.  Even though the weight lifted may be very
> little, a job is in this category when it requires a good deal of walking or standing,
> or when it involves sitting most of the time with some pushing and pulling of arm
> or leg controls.  To be considered capable of performing a full or wide range of
> light work, you must have the ability to do substantially all of these activities.  If
> someone can do light work, we determine that he or she can also do sedentary
> work, unless there are additional limiting factors such as loss of fine dexterity or
> inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

In determining at step four in the sequential process whether Plaintiff's RFC for light

work would allow her to perform past relevant work, the ALJ consulted the VE in accordance

with 20 C.F.R. § 404.1560(b)(2), which provides as follows:  "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."  The VE identified Plaintiff's past work as:  (1) a cashier as medium work with an SVP of 2; and (2) a reef maker as light work with an SVP of 2.  R. 129-31.  The VE opined a hypothetical individual with the Plaintiff's age, education, past job experience, and physical limitations could not perform Plaintiff's past relevant work but could perform as housekeeper or routing clerk.  R. 130-133.

### 2.   The ALJ Properly Considered the Opinions of Drs. Whitley and Turner in Determining Plaintiff's RFC

Plaintiff contends the ALJ erred by:  (1) failing to impose limitations based on Plaintiff's ability to deal with stress and interact with supervisors and coworkers, as recognized by Plaintiff's consulting psychologists; and (2) giving Dr. Turner's opinion less weight than Dr. Whitley's opinion.  Pl.'s Br., pp. 7-10.

### a.   Standard for Evaluating Medical Opinions

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  Sources that can provide evidence to establish an impairment include licensed physicians, but not physician's assistants.  See Farnsworth v. Soc. Sec. Admin., 636 F.

App'x 776, 783-84 (11th Cir. 2016); 20 C.F.R. § 416.913(a)(1).

Additionally, the Commissioner's regulations require the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). However, SSR 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Moreover, state agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record. See id.; Jarett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872-74 (11th Cir. 2011) (holding ALJ properly gave more weight to non-examining state consultants' opinions over treating physician's opinion); see also 20 C.F.R. § 404.1527(e)(2)(i), (iii).

Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

> **b.**   **The Limitations Imposed by the ALJ are Consistent with Dr. Whitley's Opinion**

First, Plaintiff argues the ALJ's decision not to impose limitations on Plaintiff's ability to interact with supervisors and coworkers is not based on substantial evidence because Dr. Whitley's report, to which the ALJ gave great weight, stated Plaintiff "may function best with

solitary work." Id. at 7-8; R. 604.

Dr. Whitley, a one-time consultative psychologist, opined Plaintiff could make daily decisions, manage her own appointments, schedules, and personal finances, and communicate with others appropriately. R. 604-05. Dr. Whitley also opined Plaintiff's ability to sustain effort, focus, and pace in a work setting would be at least mildly impacted by her current mood and Plaintiff appeared to be easily vulnerable to decompensate further. R. 605. Finally, as noted above, Dr. Whitley opined Plaintiff "may function best with solitary work task[s] . . . ." Id. However, Dr. Whitley noted Plaintiff's scored in the malingering range on the Miller Forensic Assessment Symptoms Test ("M-FAST"), indicating the overall validity of her symptoms were placed in doubt. R. 604.

As an initial matter, it is clear the ALJ considered the portion of Dr. Whitley's opinion relied upon by Plaintiff, as he specifically cited the passage stating Plaintiff "may function best with solitary work tasks" in his decision. R. 80. Furthermore, the ALJ's RFC limitations are consistent with Dr. Whitley's opinion because they restrict Plaintiff to performing only simple, routine tasks, involving only simple work place judgments with only occasional interaction with the general public. While Dr. Whitley opined Plaintiff "may function best with solitary work," R. 604, he did not indicate Plaintiff would be incapable of interacting with supervisors or coworkers or even have mild difficulty doing so. Accordingly, the ALJ's decision not to impose these additional limitations is supported by substantial evidence.

### c.     The ALJ Properly Gave Less Weight to Dr. Turner's Opinion

Second, Plaintiff argues the ALJ erred by giving Dr. Turner's opinion less weight than Dr. Whitley's opinion, even though the two psychologists reported similar findings. Pl.'s Br., pp. 8-9. Dr. Turner, another one-time consultative psychologist, stated Plaintiff was oriented and

denied hallucinations, delusions, problems with appetite, and suicidal or homicidal ideations.  R.
626.   Plaintiff's hygiene and posture were adequate, gait was normal, and appearance was
appropriate.  R. 627.  Plaintiff's facial expressions were appropriate to verbal content, tone of
voice and manner of speech were normal, and rate of speech was appropriate.  Id.  Plaintiff's
thought process and content seemed logical.  Id.  She did not have significant difficulty relating
to the examiner and was willing to answer questions without excessive prompting.  Id.  Her
affect was appropriate to status, demeanor was cooperative, and eye contact was sporadic.  Id.
Plaintiff's expressive language and communication skills were adequate, judgment seemed
average, and insight seemed fair.  Id.  However, her concentration seemed below average and she
required redirection and repetition throughout the interview.  Id.

Accordingly, Dr. Tuner opined Plaintiff was experiencing symptoms of anxiety but her
ability to understand and follow through with simple and complex work-related instruction was
not significantly impaired.  Id.  However, her ability to maintain focus and attention would be
mildly to moderately impaired on an intermittent basis, her ability to get along with supervisors
and peers would be mildly impaired due to her social isolation, and she would have mild
difficulties adapting to normal work-related stressors depending on her anxiety level.  Id.  Dr.
Turner also opined Plaintiff's probability of decompensation with stress was mild.  Id.

In support of his decision to give more weight to Dr. Whitley's opinion than Dr. Turner's
opinion, the ALJ stated:  (1) Dr. Turner's more limiting restrictions are inconsistent with his own
findings; and (2) Dr. Whitley's opinion is based on objective testing, whereas Dr. Turner's
opinion is based only on subjective reports.  R. 80.  Plaintiff argues the ALJ erred by giving Dr.
Turner's opinion less weight than given to Dr. Whitley's opinion because:  (1) the two
psychologists reported similar findings; (2) Dr. Turner's restrictions were not more limiting; and

10

(3) the psychologists' opinions were based on similar examinations.  Pl.'s Br., pp. 8-9.

While the psychologists' opinions were indeed similar, substantial evidence supports the ALJ's decision to give less weight to Dr. Turner's opinion.   First, Dr. Turner opined Plaintiff's limitations were more substantial than Dr. Whitley opined.  While both psychologists determined Plaintiff's ability to maintain focus and attention in the workplace would be at least mildly impaired, Dr. Turner also opined Plaintiff's ability to work with supervisors and peers in a socially appropriate manner and ability to adapt to normal work-related stressors would be mildly impaired.  R. 605, 627.  Dr. Whitley, on the other hand, does not indicate Plaintiff would not be able to adapt to normal work-related stressors and only notes Plaintiff "may function best with solitary work task" not that her ability to work with supervisors and coworkers would be significantly impaired.  R. 605.

Second, as the ALJ states, Dr. Turner's opinion is at least arguably inconsistent with his treatment notes.  Although Dr. Turner opines Plaintiff would have at least mild difficulties maintaining focus, interacting with supervisors and peers, and adapting to normal work-related stressors, his observations of Plaintiff's behavior only indicate she has below average concentration and poor ability to provide historical information.  R. 626-27.  Otherwise, Dr. Turner does not address any deficiencies in Plaintiff's appearance, ability to communicate, judgment, insight, thought process, or motor skills.  R. 627.  Thus, there is some inconsistency between Dr. Turner's observations and opinions as to Plaintiff's limitations.

Finally, the ALJ stated he gave more weight to Dr. Whitley's opinion because it was based on objective testing.  R. 80.  Indeed, Dr. Whitley performed a Miller Forensic Assessment Symptoms Test ("M-FAST") in addition to a clinical interview.  R. 601.  Dr. Whitley reported the results of the test indicated Plaintiff was in the malingering range, which placed in doubt the

validity of her symptoms.  R. 604.  On the other hand, Dr. Turner only performed a clinical evaluation.  R. 624.  While Dr. Turner noted Plaintiff's previous M-FAST score was "highly suggestive of malingering," Dr. Turner did not perform similar objective testing and merely stated there was "no embellishment or minimization" during the interview.  R. 624, 627.

Thus, based on the reasons stated above, the ALJ's decision to give less weight to Dr. Turner's opinion was supported by substantial evidence.

### d.   The ALJ Properly Considered Plaintiff's Mental Health Treatment Records

Plaintiff argues the ALJ erred in evaluating her mental limitations because the ALJ stated Plaintiff had "generally normal mental status exams" which is not consistent with the record. Pl.'s Br. 10-13.  Specifically, Plaintiff describes portions of her treatment notes from 2014 through 2016 and states the ALJ did not explicitly discuss any of the cited portions.  Id.  As an initial matter, an ALJ is "not required to refer specifically to each piece of evidence in the record"; he must only "sufficiently explain the weight given to 'obviously probative exhibits.'" Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968 (11th Cir. 2015) (quoting Dyer v, 395 F.3d at 1211); see also Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808-09 (11th Cir. 2013) ("the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits").  Here, it is clear the ALJ considered the record in its entirety, as he stated he considered all of the evidence, R. 71, and, moreover, cited many of the exhibits Plaintiff relies on in support of her position, R. 79-81.

Furthermore, contrary to Plaintiff's argument, the ALJ acknowledged Plaintiff's subjective complaints regarding her psychological symptoms, specifically noting Plaintiff's

report that "every day is different, that some days she does not want to be bothered with her children and some days she will, that she stays inside her home all day until she has an appointment, and that she has difficulty being around people."  R. 78-79.  The ALJ also described Plaintiff's overnight hospitalization in May 2012 for suicidal ideations but found, based on the record, Plaintiff has not otherwise required "significant aggressive, ongoing treatment for her mental impairments." R. 79.

The ALJ's determination is supported by the record, which shows Plaintiff's providers only prescribed conservative treatment for her mental health symptoms.  R. 343, 403-04, 426, 433-36, 535-36, 552-53, 570-71, 577, 682-83, 789, 792, 795, 799, 835-36, 982-83.  Although the ALJ found Plaintiff's statements regarding the effects of her mental health symptoms were not entirely consistent with the evidence, he nevertheless limited Plaintiff's RFC based on her mental health impairments to simple, routine tasks, involving only simple workplace judgments with only occasional interaction with the general public.  R. 77-78.  Accordingly, Plaintiff's claim the ALJ failed to acknowledge Plaintiff's mental health treatment records is without merit, and the RFC as to Plaintiff's psychological impairments is supported by substantial evidence.

### e. The ALJ Did Not Err in Evaluating Plaintiff's Morbid Obesity

Plaintiff argues the ALJ failed to state how Plaintiff's obesity was factored into the RFC and properly assess her obesity in combination with her other severe impairments.  After identifying Plaintiff's obesity as a severe impairment, the ALJ analyzed Plaintiff's obesity in determining her RFC.  As explained in Social Security Ruling ("SSR") 02-1p, obesity is no longer a listed impairment, but it is still a medically determinable impairment to be considered when evaluating disability.  SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002).  SSR 02-1p also recognizes, "Obesity is a risk factor that increases an individual's

chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body system." Id. at *3. An ALJ should assess the effect that obesity has on exertional and postural functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. at *6.

However, a mere diagnosis of obesity does not equate with a finding of disability. That is, disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Lewis v. Comm'r Soc. Sec., 487 F. App'x 481, 483 (11th Cir. 2012); Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005); 20 C.F.R. § 416.920(e)-(f). Rather, the record must contain evidence demonstrating that Plaintiff's obesity affected her ability to perform her past relevant work.

In step two, the ALJ determined Plaintiff's obesity was a severe impairment. R. 73. After discussing Plaintiff's obesity and her providers' past recommendations for treatment, the ALJ stated he considered the combined effects of Plaintiff's obesity with her other impairments in accordance with SSR 02-1p in assessing Plaintiff's RFC. R. 78. The ALJ imposed positional restrictions in the RFC restricting Plaintiff from climbing ladders, ropes, and scaffolds. R .77. Because these limitations are not reasonably attributable to Plaintiff's other severe and non-severe impairments, the ALJ imposed these limitations based on Plaintiff's obesity. Thus, the ALJ properly considered Plaintiff's obesity as required when assessing her RFC. See Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 263-64 (11th Cir. 2009) (holding ALJ properly

14

considered plaintiff's obesity when determining her RFC where ALJ determined plaintiff's obesity was severe impairment, considered treatment notes describing plaintiff's obesity, and made specific reference to SSR 02-1p).

Furthermore, Plaintiff argues the ALJ failed to impose limitations based on Plaintiff's complaints of back pain in relation to her obesity.  Pl.'s Br., p. 15.  The ALJ determined Plaintiff's alleged back pain was not a medically determinable impairment, stating there is no imaging or testing to support such a finding.  R. 74.  Furthermore, Plaintiff reported her back pain was resolved during treatment two months before the ALJ's decision.  R. 998. Accordingly, the ALJ need not have discussed Plaintiff's obesity in relation to her complaints of back pain.

The ALJ's decision indicates he properly considered Plaintiff's obesity in determining Plaintiff's RFC and imposed appropriate limitations, and the RFC as to Plaintiff's obesity is supported by substantial evidence.

### B.   The ALJ Properly Analyzed Plaintiff's Subjective Complaints

Plaintiff also argues the ALJ erred in assessing her subjective complaints by:  (1) applying his own subjective standards; (2) assessing Plaintiff's treatment record; (3) assessing Plaintiff's compliance with her treatment regimen; (4) assessing Plaintiff's work history; (5) evaluating Plaintiff's vision impairments; (6) evaluating Plaintiff's daily activities; (7) discounting lay evidence; and (8) evaluating Plaintiff's morbid obesity.  Pl.'s Br., pp. 17-25.  For the reasons stated below, the Court finds the ALJ properly analyzed Plaintiff's subjective complaints in relation to the objective medical evidence and determined Plaintiff's subjective complaints were not completely consistent with the objective evidence.

### 1.      The Standard for Evaluating Subjective Complaints

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  The Plaintiff must show:  (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction.  Id.

When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."[2]  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  The ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability."  Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts."  Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence.  Fortenberry

---

[2]On March 16, 2016, Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p.  SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  SSR 16-3p eliminates the use of the term "credibility" and clarifies "subjective symptom evaluation is not an examination of an individual's character."  Id.  However, the change in terminology does not change the substance of the Court's analysis.  See Waters v. Berryhill, CV 316-002, 2017 WL 694243, at *6, n.4 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted by* 2017 WL 693275 (S.D. Ga. Feb. 21, 2017.)

v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[3]  As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).  As explained below, the ALJ properly concluded Plaintiff's medically determinable impairments could possibly cause the alleged symptoms, but her subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the objective evidence of record.

### 2.     The ALJ Did Not Apply a Subjective Standard

Plaintiff argues the ALJ applied a subjective standard by finding the objective evidence was inconsistent with allegations of "debilitating conditions" or "total debilitation."  Pl.'s Br., p. 17.  While the ALJ refers to "debilitating psychological symptoms," "total debilitation," and "extreme debilitation" in his decision, he uses those terms to characterize Plaintiff's subjective complaints, not to describe the level of impairment Plaintiff must establish to merit relief.  R. 79.  Moreover, while the ALJ determined Plaintiff's complaints of debilitating symptoms were inconsistent with the medical evidence, the ALJ found Plaintiff's anxiety and affective disorders were severe impairments and imposed limitations in the RFC based on the impairments.  R. 73, 77.  Accordingly, there is no evidence the ALJ applied a subjective standard at any stage in assessing whether Plaintiff's subjective complaints were consistent with the record.

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

### 3. The ALJ Did Not Err in Assessing Plaintiff's Treatment Record

Plaintiff argues the ALJ erred by finding there were "far fewer instances of treatment than that expected for someone experiencing severe debilitating pain and limitations and mental anguish," as the record is longer than one thousand pages and includes reports of many instances of treatment. Pl.'s Br, p. 18. Plaintiff's argument, however, undermines itself. First, a significant portion of the record, almost 350 pages, consists of the administrative record of the case, not treatment records. See R. 1-349. Second, the subject matter of Plaintiff's treatment records is widely varied, involving optical exams, chest pains, abdominal pain, mental health issues, pregnancy issues, gynecological issues, laboratory results, sleep issues, emergency room visits for diverse symptoms, diabetes treatment, radiology results, breathing problems, brain tumors, leg and foot pain, cardiology and pulmonary issues, respiration issues, and migraines. Furthermore, the records cover more than six years of treatment history and also include some treatment notes from as early as 1990 and 1991. R. 950-68. Considering the length of time and number of medical issues covered by the treatment records, the ALJ was not unjustified in considering the record of treatment for pain and mental anguish to be somewhat sparse.

However, the ALJ did not merely state there were relatively few instances of treatment and then disregard Plaintiff's treatment notes. On the contrary, the ALJ's decision makes it clear he adequately considered the treatment notes as to Plaintiff's severe and non-severe impairments when determining limitations for the RFC. R. 74-76, 78-82. Moreover, the ALJ primarily relied on the lack of objective evidence to support Plaintiff's subjective complaints. R. 79. Thus, the ALJ properly considered Plaintiff's treatment record in evaluating Plaintiff's subjective complaints.

### 4. The ALJ Did Not Err in Assessing Plaintiff's Compliance with Treatment

Plaintiff argues the ALJ erred by relying on Plaintiff's noncompliance with treatment when addressing her subjective complaints without considering the reasons for her noncompliance. Pl.'s Br., p. 19. First, Plaintiff argues the ALJ should have found Plaintiff was disabled and used her noncompliance to deny her benefits pursuant to Social Security Ruling ("SSR") 82-59. Id. at 20. However, SSR 82-59 does not indicate an ALJ may only consider noncompliance in this manner. SSR 82-59, 1982 WL 31384 (Jan. 1, 1982). In fact, SSR 16-3p, also cited by Plaintiff, describes how to evaluate subjective complaints based on noncompliance in making the initial disability determination. SSR 16-3p, 2016 WL 1119029, at *8-9 (Mar. 16, 2016).

Next, Plaintiff argues SSR 16-3p prohibits an ALJ from finding a claimant's symptoms are inconsistent with the evidence as a result of noncompliance without considering the reasons why he or she may not comply and obtaining an explanation. Pl.'s Br., p. 19. Although the ALJ notes Plaintiff was not compliant with treatment for her diabetes, obesity, and psychological symptoms, the ALJ determined Plaintiff's subjective complaints were inconsistent with her treatment records, the conservative treatment recommended by providers, and the lack of objective evidence to support her complaints, not merely her noncompliance. R. 78-82. First as to the treatment records regarding Plaintiff's diabetes, the ALJ stated: (1) the record fails to document significant complications; (2) Plaintiff has grossly normal extremities and neurological findings on examination; and (3) there have been no documented episodes of hyperglycemia, hypoglycemia, fainting, or hospitalization due to her diabetes. R. 78. As to Plaintiff's obesity, the ALJ stated he considered the effects of Plaintiff's obesity in spite of her noncompliance with

her provider's recommendations and referrals.   Id.   Finally, as to Plaintiff's psychological symptoms, the ALJ noted Plaintiff's providers only recommended conservative treatment despite her noncompliance and imposed limitations on Plaintiff's RFC regardless of her noncompliance. R. 79, 81.   Thus, although the ALJ noted Plaintiff was not compliant with treatment as to her diabetes, obesity, and psychological symptoms, he determined Plaintiff's subjective complaints were inconsistent with the record based on the inconsistency between the subjective complaints and the objective evidence.

### 5.      The ALJ Did Not Err in Assessing Plaintiff's Work History

Plaintiff argues the ALJ erred in assessing Plaintiff's work history by questioning whether her continuing unemployment is the result of a medical problem.  Pl.'s Br., p. 21.  The ALJ stated Plaintiff's work history revealed poor earnings prior to her alleged disability, suggesting a disinclination for work activity.  R. 79.  Plaintiff argues the ALJ did not consider Plaintiff had a brain tumor as a child, only has an eighth-grade education, and has four children. Pl.'s Br., p. 21.

As an initial matter, the ALJ only indicates Plaintiff's work history "raises a question" as to the basis for her continuing unemployment.  R. 79.  At no point does the ALJ indicate he relies on this as a basis for determining whether Plaintiff's subjective complaints are inconsistent with the objective evidence.  Furthermore, despite Plaintiff's argument to the contrary, the ALJ did, in fact, consider Plaintiff's brain tumor and poor vision when assessing Plaintiff's work history, noting Plaintiff was able to work in the past despite those impairments with no documented worsening leading up to Plaintiff's alleged onset date.  R. 79. Further, the ALJ considered Plaintiff's limited education in determining whether Plaintiff is disabled.  R. 82.  Finally, the fact that Plaintiff is a mother is not relevant to whether her subjective complaints are consistent with

the objective evidence.   Thus, the ALJ did not err in assessing Plaintiff's work history when determining whether her subjective complaints were consistent with the objective evidence.

### 6.      The ALJ Did Not Err in Evaluating Plaintiff's Vision Impairments

Plaintiff argues the ALJ erred by claiming there was "no evidence [Plaintiff's vision] had worsened since the alleged onset date . . ." when there was clear evidence to the contrary  Pl.'s Br., pp. 21-22.  Plaintiff misreads the ALJ's decision.  In fact, the ALJ states there was "no documented worsening [of Plaintiff's vision] *leading up to* the claimant's onset date."  R. 79 (emphasis added).  Thus, Plaintiff's argument is groundless.

### 7.      The ALJ Did Not Err in Evaluating Plaintiff's Daily Activities

Plaintiff argues the ALJ presented a "skewed and incomplete picture" of Plaintiff's daily activities in determining her subjective complaints were inconsistent with the objective evidence. Pl.'s Br., pp. 22-23.  The ALJ stated Plaintiff's daily activities are inconsistent with debilitating conditions because she helps take care of her four children, uses a computer to play games and use the internet, makes crafts, uses a cell phone, runs errands with her mother, watches television, and interacts with her boyfriend.  R. 79.  Plaintiff argues these activities are not comparable to typical work activities and the ALJ's findings are inconsistent with Plaintiff's mother and grandmother's reports that Plaintiff does not cook, shop, perform chores, has no hobbies, and mostly sits in one spot all day.  Pl.'s Br., pp. 22-23.

The ALJ considered Plaintiff's reports of not wanting to deal with her children some days, staying inside until she has an appointment, and having difficulties with other people.  R. 79. Furthermore, the ALJ cited the exhibits Plaintiff references in its argument, see R. 78; Pl.'s Br., pp. 22-23, and relied on the consulting psychologists' reports, which include similar descriptions of Plaintiff's daily activities, R. 79-80, 602-03, 626.  The ALJ determined Plaintiff's

subjective complaints are inconsistent with the objective evidence, citing substantial evidence in support of this determination. Although the ALJ did not explicitly mention every subjective complaint, he need not do so, as it is clear he considered the entire record. Lewen, 605 F. App'x at 968. Accordingly, the ALJ's evaluation of Plaintiff's daily activities of living is not in error.

### 8.      The ALJ Did Not Err in Evaluating Lay Evidence

Plaintiff argues the ALJ erred by giving little weight to Plaintiff's mother and grandmother's reports without supporting his decision with substantial evidence. Pl.'s Br., pp. 23-24. Specifically, Plaintiff argues the ALJ based his decision on the findings the mother and grandmother were (1) not acceptable medical sources and (2) biased by affection toward Plaintiff. Id.

Although the ALJ made these findings, Plaintiff fails to recognize the ALJ primarily relied on his finding both reports were not entirely consistent with the objective evidence to support his giving little weight to both reports. R. 81. This is not surprising, as their statements basically duplicate Plaintiff's subjective complaints, which the ALJ found were inconsistent with the record. See Powell v. Astrue, 250 F. App'x 960, 965 (11th Cir. 2007) ("Because the sisters' statements basically duplicate [the plaintiff's] own testimony, it makes sense that the ALJ would treat the two sets of evidence in the same manner.") Moreover, the ALJ did not completely reject their opinions but instead only did so to the extent they were not consistent with the objective evidence. R. 81. Accordingly, the ALJ gave proper consideration to Plaintiff's mother and grandmother's opinions regarding Plaintiff's subjective complaints.

### 9.      The ALJ Did Not Err in Assessing Plaintiff's Obesity

Plaintiff argues the ALJ erred in considering Plaintiff's morbid obesity as it involves her subjective complaints because the ALJ based his finding on Plaintiff's failure to lose weight.

Pl.'s Br., pp. 24-25.  As discussed above, the ALJ properly considered Plaintiff's obesity in determining the RFC, and there is no indication the ALJ discounted the effects of obesity due to Plaintiff's failure to lose weight.  R. 78; Pl.'s Br., p. 24.  In fact, the ALJ explicitly stated he considered the effects of Plaintiff's obesity despite her noncompliance with the provider's recommendations.  R. 78.  Furthermore, there is no indication the ALJ's discussion of Plaintiff's noncompliance had a substantial effect on his determination Plaintiff's subjective complaints were inconsistent with the objective evidence, as his findings as to her subjective complaints were supported by the lack of aggressive treatment prescribed by providers.  Accordingly, the ALJ did not err in assessing Plaintiff's obesity in terms of her subjective complaints merely by stating Plaintiff had been noncompliant with providers' recommendations.

## IV.    CONCLUSION

Although Plaintiff may disagree with the conclusion reached by the ALJ based on the grounds set forth above, the RFC and the ALJ's treatment of Plaintiff's subjective complaints is supported by substantial evidence.  For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 19th day of November, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA